J-S14016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: G.I.M., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.M., MOTHER | : : : : : : : : | |
| | : | No. 2651 EDA 2017 |

Appeal from the Order Entered July 20, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000701-2016,
CP-51-DP-0002734-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: I.G.M.-D., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.M., MOTHER | : : : : : : : : | |
| | : | No. 2652 EDA 2017 |

Appeal from the Order Entered July 20, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000702-2016,
CP-51-DP-0002737-2014

BEFORE:  OTT, J., McLAUGHLIN, J., and RANSOM*, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED APRIL 11, 2018**

D.M. ("Mother") appeals from the decree entered in the Court of Common Pleas of Philadelphia County involuntarily terminating her parental rights to her daughters, G.I.M. and I.G.M.D. ("the Children"). Mother claims a lack of notice of the termination hearing and challenges the sufficiency of the evidence. We affirm.

_____
*   Retired Senior Judge assigned to the Superior Court.

In its Pa.R.A.P. 1925(a) opinion, the trial court aptly summarized the factual and procedural history of this case, which we adopt for purposes of this appeal. *See* Trial Court Opinion, filed Oct. 11, 2017 (1925(a) Op.), at 1-15.

By way of background, G.I.M. (born January 2008) and I.G.M.D. (born September 2011) are Mother's daughters. E.T. is G.I.M.'s father and K.D. is I.G.M.D.'s father.[1] Both Children have never resided with their respective fathers. The Children were first adjudicated dependent in December 2014, following an incident in October 2014 where Mother left the Children to wander on a street corner while she injected drugs. Mother's parental reunification objectives included drug and alcohol treatment; mental health treatment; parenting, anger management, and employment courses; visitation with the Children; and the procurement of suitable housing for the Children.

Mother raises three issues for our review:

1.      Did the court err or abuse its discretion when terminating Mother's parental rights under § 2511(a) when Mother was denied [] a hearing for ineffective or no service of notice of said hearing, and terminating Mother's parental rights on non-competent or insufficient evidence?

2.      Did the court err or abuse its discretion when terminating Mother's parental rights under § 2511(a) when Mother has completed some of her plan goals, and terminating Mother's parental rights on non-competent or insufficient evidence?

---

[1] The instant termination order also terminated the parental rights of E.T. and K.D. E.T. also filed an appeal, which is docketed in this Court at 2708 EDA 2017. K.D. did not appeal.

3.      Did the court err or abuse its discretion when terminating Mother's parental rights under § 2511(b) without analyses of the legal interests of the Children, and therefore, terminating Mother's parental rights on non-competent or insufficient evidence?

Mother's Brief at 2.

When considering an appeal from an order involuntarily terminating parental rights, we accept as true the trial court's findings of facts so long as the record supports them, and then determine whether the trial court made an error of law or abused its discretion in rendering its decision. *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). A trial court's decision constitutes an abuse of discretion only if it is manifestly unreasonable or is the product of partiality, prejudice, bias, or ill will. *Id.*

The party petitioning for termination bears the burden of proving all elements of the termination petition by clear and convincing evidence. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

The termination of parental rights is governed by 23 Pa.C.S. § 2511, which requires a two-step analysis. In the first step, the party seeking termination must prove by clear and convincing evidence that the parent's conduct meets at least one of the 11 grounds for termination set forth in

Section 2511(a). *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). If the court determines that the petitioner has proven at least one of the provisions of Section 2511(a), only then does it proceed to the second step of the analysis. *Id.* In the second step, the court must determine whether, considering the child's developmental, physical, and emotional needs and welfare, termination is in the best interests of the child. 23 Pa.C.S. § 2511(b); *In re Adoption of S.P.*, 47 A.3d 817, 830 (Pa. 2012). In conducting this analysis, the court should examine the emotional bond between parent and child, with close attention to the effect on the child of permanently severing any such bond. *In re L.M.*, 923 A.2d at 511.

In her first issue, Mother asserts that that the trial court erred by terminating her parental rights without affording her proper notice as required under 23 Pa.C.S. § 2513.[2] Mother contends that the Department of Human Services ("DHS") failed to utilize all possible avenues to locate her to provide her with notice of her termination hearing. *See* Mother's Brief at 6-7. Mother also argues that the trial court abused its discretion by terminating her parental rights under Section 2511(a) because she has experienced periods of sobriety, completed parenting classes, and could complete her reunification objectives if given the opportunity. *Id.*

---

[2] Section 2513 provides "[a]t least ten days' notice shall be given to the parent . . . whose rights are to be terminated by personal service or by registered mail to his or their last known address or by such other means as the court may require." 23 Pa.C.S. § 2513(b).

- 4 -

The trial court rejected Mother's arguments by initially noting that counsel for DHS had attempted to serve two trial subpoenas on Mother on three occasions at addresses obtained through a Parent Locator Service (PLS) search. *See* 1925(a) Op. at 18-19. Thus, the court determined that DHS's attempts at service constituted "reasonable efforts," especially in light of Mother's failure to provide the agency with an updated address, despite the fact that the Children were in placement. *Id.* The trial court emphasized that Mother's parental rights were properly terminated because the testimony established that she had failed to perform parental duties, obtain and maintain proper housing, complete drug and alcohol treatment, obtain employment, and maintain sobriety long enough to achieve unsupervised visitation with the Children. *Id.* at 19-20.

Next, in a combined argument addressing both her second and third issues, Mother argues that the trial court erroneously terminated Mother's parental rights because there was no "concrete evidence" of the Children's wishes regarding whether the Children wished to abandon their legal connection to Mother. *See* Mother's Brief at 7-8. Mother claims the evidence on this point was "mixed," and points to testimony that the Children considered both foster mother and Mother to be their "mothers." *Id.* at 8. The trial court rejected Mother's argument. It pointed out that the court had appointed legal counsel for the Children, who actively advocated for the Children at hearings. *See* 1925(a) Op. at 21-22. Further, the court reviewed

the evidence and concluded that the Children were not bonded with Mother but did share a strong, positive bond with their foster mother. ***Id.*** at 21.

Accordingly, after review of the record, the parties' briefs, and the relevant law, we affirm based on the well-reasoned opinion of the Honorable Allan L. Tereshko, which we adopt and incorporate herein. ***See id.*** at 16-24.

Order affirmed.

Judge Ott joins the memorandum.

Judge Ransom concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/18

THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PHILADELPHIA COUNTY
IN THE COURT OF COMMON PLEAS

IN THE INTEREST OF: : FAMILY COURT DIVISION
: JUVENILE BRANCH-DEPENDENCY
:
I.G.M.D., a Minor : CP-51-AP-0000702-2016/CP-51-DP-0002737-2014
d/o/b: 09/02/2011 :
:
G.I.M., a Minor : CP-51-AP-0000701-2016/CP-51-DP-0002734-2014
d/o/b: 1/24/2008 :
:
:
:
Appeal of: : Superior Court Nos. 2651 EDA 2017,
D.J.M., Mother : 2652 EDA 2017- Consolidated

## OPINION

D.J.M. ("Mother"), Appeals from the Decrees and Orders entered by this Court on July 20, 2017, granting the Petitions to Involuntarily Terminate Mother's Parental Rights to her two minor children: a female, I.G.M.D., (d/o/b September 2, 2011), and a female, G.I.M., (d/o/b January 24, 2008), and changing the Children's Permanency Goal to Adoption, filed by the Department of Human Services ("DHS") on August 5, 2016, and served on all parties.

After the Termination/Goal Change Hearing on July 20, 2017, this Court found that clear and convincing evidence was presented to terminate the parental rights of Mother and E.T., ("Father") as to Child, G.I.M.; and to terminate the parental rights of Mother and K.D., ("Father") as to Child, I.G.M.D. In response to the Order of July 20, 2017, terminating her parental rights, Mother, filed appeals on August 18, 2017. G.I.M.'s Father, E.T., also filed an Appeal to the Order of July 20, 2017, which will be addressed by the Court in a separate Opinion.

1

## STATEMENTS OF MATTERS COMPLAINED OF ON APPEAL

In her Statement of Matters Complained of on Appeal, Mother raises the following issues:

1. The Court erred in terminating Mother's parental rights in her absence at the trial because there was no service of the petition on Mother.
2. Mother has achieved some of her objectives and can be a parent.
3. The Court erred in terminating Mother's parental rights because the Child's wish could be unclear under In Re Adoption of LBM (84 MAP 2016).

## PROCEDURAL HISTORY

D.J.M. is the Mother of both Children: I.G.M.D. and G.I.M. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"a").

K.D. is the Father of I.G.M.D. and is listed as the Father on the Child's birth certificate. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"b").

E.T. is the putative/presumptive Father of G.I.M. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"c").

On October 31, 2014, the Department of Human Services (DHS), received a General Protectives Services (GPS) Report alleging that the Children's Mother, D.J.M., was with the Children on a street corner and asked their Maternal Uncle, M.S., to help her inject drugs; that when he refused, Mother injected the drugs herself; that the Children

began to wander off so M.S. took the Children to the home of their Maternal Grandmother, S.S.; and that G.I.M. was found holding Mother's purse which had needles in it. The Report also alleged that the Children were with Maternal Grandmother. S.S. where they were to remain according to Safety Plan that was completed on October 31, 2014. The Report also alleged that the family was residing in a shelter; that G.I.M.'s Father, E.T., was incarcerated; and that G.I.M. attended Lawton Elementary School in the 1st grade and had missed several days of school. The Report further alleged that Mother had ongoing drug and alcohol issues and was in a methadone program, but was allegedly abusing methadone by attending more than one clinic daily; and that E.T. had a criminal history and also the family was currently receiving In Home Protective Services (IHPS) through Community Umbrella Agency (CUA) Turning Points for Children. This Report was substantiated and determined as valid. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016. ¶"d").

On October 31, 2014, DHS visited the home of Maternal Grandmother, S.S. and found it safe and appropriate. Both S.S. and her paramour, J.M., passed all necessary clearances. A Safety Plan was implemented. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016. ¶"e").

On November 3, 2014, S.S. found needles in her home after Mother had visited the Children. S.S. found needles in Mother's purse. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"f").

On November 4, 2014, Mother began receiving in-patient drug and alcohol treatment and counseling at SOAR. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"g").

Mother was denied service from her methadone clinic on 10/16/2014 due to higher than normal levels of methadone in her blood, suggesting she was attending more than one clinic on a daily basis. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"h").

On 11/24/2014, DHS filed an urgent Dependent Petition. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"i").

Adjudicatory Hearings for the Children were held on December 3, 2014, before the Honorable Allan L. Tereshko. The Court found that legal custody of the Children to transfer to DHS and physical custody of the Children to remain with Maternal Grandmother. DHS has completed a home evaluation on Grandmother's home. Mother is referred to CEU for a forthwith full drug and alcohol screen, assessment, and monitoring. Father is referred to the CEU unit for a forthwith drug screen, assessment, and monitoring once he avails himself. CUA to refer for kinship. Mother and Father to have supervised visits with the Children, if they avail themselves. Children are safe as of 12/01/2014. (Orders of Adjudication and Disposition-Child Dependent--Amended, 12/03/2014).

On January 15, 2015, I.G.M.D.'s Father, K.D., was arrested and charged with providing false identification to a law enforcement officer, displaying plate card in improper vehicle, driving an unregistered vehicle, and improper turning movement and

4

signals. A bench warrant was later issued, on 5/1/2015, for failure to appear and the case was continued due to unavailability of defendant. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016. ¶"k").

On January 15, 2015, CUA held a SCP meeting for the family. The parental objectives for Mother were: 1) Mother will participate in drug and alcohol treatment until fully completed; 2) Mother will continue mental health treatment and comply with medication management; 3) Mother will locate suitable housing with space for the Children; 4) Father, E.T., will make his whereabouts known and participate in planning for the Children's needs; and 5) E.T. will contact CUA and provide valid contact information and respond to CUA correspondence. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016. ¶"l").

A Continuance was granted on March 24, 2015, for both Children's cases. DHS commitments to stand. Cases to remain status quo. (Continuance Orders, 3/24/2015).

Permanency Review Hearings were held for both Children on May 20, 2015, before the Honorable Allan L. Tereshko. Orders were entered that legal custody of the Children to remain with DHS, and placement to continue in Foster Care JFCS. Children to remain committed. Mother is incarcerated[1], and CUA to arrange supervised visits at the prison for Mother. Children may be moved to Kinship Home of Grandmother prior to next court date by agreement of the parties. I.G.M.D. referred to Children's Crisis

---

[1] Secure Court Summary: D.J.M., d/o/b: 07/14/1984.

5

Treatment Center for services. Her Father's visits are suspended until further order of the court and after Child's evaluation at CCTC. (Permanency Review Orders, 5/20/2015).

Permanency Review Hearings were held for both Children on August 13, 2015, before the Honorable Allan L. Tereshko. Orders were entered that legal custody of the Children to remain with DHS, and placement of I.G.M.D. to remain in Foster Care through JFCS—supervised by CUA Turning Points for Children. Child is enrolled in therapy services through JJPI, however the therapist canceled on the family three times and services are switched to Bethanna. Child is to continue to receive therapy and is up-to-date with her medical and dental. G.I.M. to remain in Foster Care through CUA Turning Points for Children. Child has intake appointment through the Wedge scheduled for 8/14/2015, and is up-to-date with medical and dental. Mother is referred to CEU for assessment, forthwith drug screen with three random drug screens and dual diagnosis. Mother is not to have visitation with the Children unless recommended by the Children's therapist. I.G.M.D.'s Father's visits are suspended until further order of the court. (Permanency Review Orders, 8/13/2015).

On September 17, 2015, Mother was referred to ARC for anger management, housing, mental health, and parent education. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"p").

A CEU Report for Mother dated 10/29/2015, reflected the following: Mother tested positive for opiates on 10/14/2015; tested negative for all substances on 8/13 & 8/15/2015; Mother scheduled an appointment with the CEU for 9/15/2015 to provide verification for her enrollment in treatment. She was a no call/no show to the appointment. CEU, therefore, could neither confirm nor deny Mother's treatment status.

6

(Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"o").

On October 22, 2015, CUA held a SCP meeting for the family. The parental objectives for Mother were: 1) Mother will participate in drug and alcohol treatment and comply with recommendations; 2) Mother will comply with her court-ordered random drug screens to maintain sobriety; 3) Mother to comply with her dual diagnosis treatment; 4) Mother will participate in courses through ARC as referred; 5) Mother will locate suitable housing with space for the Children; 6) Father, E.T., will make his whereabouts known and participate in planning for the Children's needs; and 7) E.T. will contact CUA and provide valid contact information and respond to CUA correspondence. Mother attended this meeting. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"q").

Permanency Review Hearings were held for both Children on October 30, 2015, before Juvenile Court Hearing Officer, William T. Rice. Court Orders were entered that legal custody of the Children to remain with DHS, and placement of I.G.M.D. to remain in Foster Care through Bethanna. Child attends daycare, and is medically up-to-date. She has eczema and is being treated. Child had intake at JJPI and was referred to CCTC. She has telephone contact with her sibling. G.I.M. attends Pennypacker School in the 2nd grade, and is medically up-to-date. Child receives weekly individual therapy at the Wedge, and has telephone contact with her sibling. Mother is attending Parenting and anger management at ARC, and will begin Job Training. Both Fathers whereabouts are unknown. Children to remain in therapy, and CUA to explore kinship resources. Mother referred to CEU forthwith for full drug and alcohol screen dual diagnosis, assessment and

7

monitoring and 3 randoms prior to next court date. Mother referred to BHS for consultation/evaluation. Both Fathers referred to CEU forthwith for full drug and alcohol screen, dual diagnosis and assessment and monitoring when they avail themselves. (Permanency Review Orders, 10/30/2015).

On January 20, 2016, a revised SCP meeting was held concerning the family. The parental objectives were: 1) Mother will participate in drug and alcohol treatment and comply with recommendations; 2) Mother will comply with her court-ordered random drug screens to maintain sobriety; 3) Mother will update the CUA case manager as to any new medications prescribed for her; 4) Mother will participate in parenting, anger management, and employment courses through ARC; 5) Mother will locate suitable housing with operable utilities; 6) Father, E.T., will make his whereabouts known and participate in planning for the Children's needs; and 7) E.T. will contact CUA and provide valid contact information and respond to CUA correspondence. 8) Father, K.D., will comply with court orders; 9) K.D. will attend a drug and alcohol treatment program and comply with treatment recommendations; 10) K.D. will obtain suitable housing with operable utilities; 11) K.D. will complete a parenting education course. Mother and Father, K.D., participated in the meeting by telephone. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"s").

In January 2016, Father, K.D., presented documentation to the CUA case manager reflecting his attendance in an intensive outpatient drug and alcohol treatment program with NHS Parkside Recovery. Within that program, K.D. was engaging in methadone maintenance, parenting classes, and urine drug screens. As of 1/26/2016, K.D. had

8

completed the first phase of treatment and moved to the second phase. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016. ¶"t").

A CEU Report for Mother dated 1/26/2016, reflected the following: Mother participated in a drug and alcohol assessment at Family Court on 12/03/2015, and was referred to Intensive Outpatient Dual Diagnosis Treatment at Parkside Recovery; Mother failed to attend her intake appointment on 1/02/2016, as per Tyrone Frazier at Parkside Recovery; CEU recommended that Mother reschedule an intake appointment with Parkside Recovery and stay until the success completion of the program. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016. ¶"u").

Permanency Review Hearings were held for both Children on January 27, 2016, before the Honorable Allan L. Tereshko. Court Orders were entered that legal custody of the Children to remain with DHS, and placement of I.G.M.D. to remain in Pre-Adoptive Home through JJC. Visitation with her sibling is occurring at least twice a month. Mother and Father have supervised visits with the Child at the Agency, visits are to continue as arranged. Child attends TOPS Day Care, and receives individual therapy through JJPI. G.I.M. to remain in a Pre-Adoptive Home through JFCS. Visitation with her sibling is occurring at least twice a month. Mother has supervised visits with the Child at the Agency, visits are to continue as arranged. Child attends Pennypacker School, 2nd grade, and receives individual therapy through The Wedge. A Report from CEU for Mother is incorporated into the record. Mother is re-referred to CEU for assessment and forthwith drug screen. All services for the Children to continue. CUA to

9

explore a potential resource for the Children. Children may be moved prior to the next court date by agreement of the parties. (Permanency Review Orders, 1/27/2016).

On April 12, 2016, Mother tested positive for Phencyclidine (PCP) at Parkside-Frankford. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"w").

A CEU Report for Mother dated 4/19/2016, reflected the following: Mother was then attending substance abuse treatment at Parkside-Frankford; as per Mother's counselor at Parkside-Frankford, Mother had made efforts during the past period to further her recovery, and specifically, that she attended group and individual sessions and expressed a desire to reunite with her Children; Mother was taking prescribed Suboxone to stabilize her Opiate use disorder. Mother rendered negative drug screen on 1/27/2016, at Family Court and 4/07/2016, at Parkside Frankford; Mother tested positive for PCP on 4/12/2016 at Parkside-Frankford. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"x").

Permanency Review Hearings were held for both Children on April 20, 2016, before the Honorable Allan L. Tereshko. Court Orders were entered that legal custody of the Children to remain with DHS, and placement of I.G.M.D. to remain in Foster Home through Tabor. Remain as committed. G.I.M. to remain in Foster Home through JFCS. Mother's counsel failed to appear, case continued. (Permanency Review Orders, 4/20/2016).

On May 7, 2016, Mother and Father, K.D., attended a scheduled visit with the Children. CUA Case Manager, Iesha Irwin, observed both Mother and K.D. under the influence of a mind-altering substance. She observed that Mother and K.D. displayed

10

slurred speech, bloodshot and glassy eyes, and constant back and forth to the bathroom. Mother and K.D.'s state prohibited them from being able to effectively interact with the Children. During the visit, the Children appeared uncomfortable and kept asking to leave. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"y").

Permanency Review Hearings were held for both Children on May 25, 2016, before the Honorable Allan L. Tereshko. Court Orders were entered that legal custody of the Children to remain with DHS, and placement of I.G.M.D. to remain in Foster Home through Turning Points, and G.I.M. to remain in Foster Home through JFCS. Weekly supervised visits with Mother and Father, K.D., are to continue. Remain as committed. Mother referred to CEU for assessment, monitoring, forthwith drug screen and 3 randoms prior to next court date. Father, K.D. is referred to CEU for assessment, monitoring, forthwith drug screen and 3 randoms prior to next court date. Mother and Father, K.D. are to sign consents for I.G.M.D. to be moved to the home of Amber Kelly by agreement of DHS and Child Advocate, and to sign consents for the Child at Tree of Life. Father, K.D. was referred for parenting. I.G.M.D. is receiving services through Tree of Life. (Permanency Review Orders, 5/25/2016).

On July 15, 2016, Mother was discharged from her drug and alcohol programs at NHS Parkside due to inconsistency with the treatment. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 8/05/2016, ¶"aa").

Permanency Review Hearings were held for both Children on August 24, 2016, before the Honorable Richard J. Gordon. Court Orders were entered that legal custody of

the Children to remain with DHS, and placement of I.G.M.D. to remain in Foster Home through Turning Points, and G.I.M. to remain in Foster Home through JFCS. Children are doing well. CEU submitted Report as to Mother. G.I.M.'s Father, E.T., address is 1115 South 54 Street, and mailing address is 1412 South Addison Street. Mother and Father, K.D., are referred back to CEU for assessment, full drug and alcohol screens, and 3 random screens prior to next court date, once they avail themselves. ACS to do PLS on Mother. CUA Turning Points for Children to explore Paternal Grandmother of G.I.M. as possible placement/kinship resource and do home assessment on Father, E.T.'s home. Continuance Granted. (Permanency Review Orders, 8/24/2016).

Continuances granted on December 14, 2016 for both Children's cases. DHS commitments to stand. Request by ACS, and cases to remain status quo. (Continuance Orders, 12/14/2016).

Permanency Review Hearings were held for both Children on April 27, 2017, before the Honorable Allan L. Tereshko. Court Orders were entered that legal custody of the Children to remain with DHS, and placement of Children to remain in Foster Home through Turning Points. Children are safe as of 4/06/2017. Mother and Father, K.D., referred to CEU forthwith for full drug and alcohol screen, assessment and monitoring and 3 randoms prior to next court date. DHS to do PLS on Mother and prison search. CUA to contact Father, K.D's., probation officer to find out his address. Father, E.T., resides at 1115 South 54 Street, Philadelphia, PA 19143. Legal Liaison Unit to administratively appoint counsel for each Child and Clair Michelle Stewart to remain as GAL for both Children. Next listing is a Contested Goal Change hearing. (Permanency Review Orders, 4/27/2017).

12

## TERMINATION HEARINGS

This Court held the Contested Termination and Goal Change Hearing for both Children on July 30, 2017, regarding Mother and both Fathers' parental rights. Mother, D.J.M. did not attend the hearing, but was represented by counsel, Nghi Duong Vo. G.I.M.'s Father, E.T., attended the hearing and was represented by counsel, Daniel Silver. I.G.M.D.'s Father, K.D., did not attend the hearing, but was represented by counsel, Neal Masciantonio. (N.T. 7/20/2017, p.3 at 10-18).

Counsel for DHS, Bridget Warner, noted that G.I.M.'s Father, E.T. was present at the hearing. She also noted that the PLS for Mother reflected 4448 Elizabeth Street, and attempted to serve her with the termination petition at that address and at another prior address which was 3132 F Street, and after three (3) attempts it was left at her door. DHS also attempted to serve Father, K.D., at the same address at 4448 Elizabeth Street, and also to 3132 F Street, and after three (3) attempts it was left at his door. (N.T. 7/20/2017, p.4 at 20-25; p.5 at 1-20).

The first witness to testify was Iesha Erwin, Case Manager from CUA-Turning Points for Children. Ms. Erwin stated she has been the Case Manager for both Children since the fall of 2015 to December 2016. She noted the Children came into care when they were left wandering the street while Mother was using drugs. The Children were removed from Mother's care and placed at the Maternal Grandmother's house. She noted the Children were never in the care of their Fathers. (N.T. 7/20/2017, p.10 at 5-25; p.11 at 1-25).

13

Ms. Erwin testified the Single Case Plan objectives for Mother were to obtain and maintain housing, drug and alcohol treatment, employment and visitation with her Children. Mother participated in drug and alcohol programs at NHS Parkside-Frankford, and then at NHS Parkside, however, she did not complete the programs. Mother's specific drugs of choice were opiates and PCP. Mother never maintained sobriety enough to achieve unsupervised visits with her Children, and all of her visits were supervised on a weekly basis. (N.T. 7/20/2017, p.12 at 1-25; p.13 at 1-3).

Regarding housing, Ms. Erwin testified that Mother never obtained safe and appropriate housing for reunification with her Children. Mother was also referred to ARC services, and completed parenting. (N.T. 7/20/2017, p.13 at 4-15).

Ms. Erwin testified she supervised visits between Mother and her Children. She noted that Mother would pay more attention to I.G.M.D. than to G.I.M., but she would try to interact with both Children, with one Child being more highly functional than the other. At the time, she ceased supervising the case in December 2016, she believed that the termination of Mother's parental rights were in the Children's best interest because Mother was still using drugs and had not completed the single case plan objectives. (N.T. 7/20/2017, p.13 at 25; p.14 at 1-20).

Ms. Erwin stated that the Children were placed with the current Foster Parent that is present in the court hearing and their behavior has been pretty pleasant. They were gradually getting better, and they were stable, doing well, and were bonding with their caregiver. (N.T. 7/20/2017, p.20 at 1-11).

Catherine Devine, CUA Case manager, was the next witness to testify. She became the Case Manager in December 2016, and remains as Case Manager for both

14

Children to the present. Regarding Mother's case plan objectives, she testified that Mother has not complied with any of the objectives. (N.T. 7/20/2017, p.32 at 10-25; p. 33 at 1-4).

Ms. Devine noted that Mother has visited the Children seven times since December 2016, and she has observed the visits. She testified she does not believe a parent-child relationship exists between Mother and her two Children. The Children are more interested in the gifts she brings to them, they do not get upset when the visits end, and they do not get upset when Mother fails to visit. (N.T. 7/20/2017, p.33 at 5-22; p.34 at 1-11).

Ms. Devine further testified she has observed the interactions between the Children and their pre-adoptive Foster Parent. They call the Foster Parent Mom, and both stated to her that they do not want to leave her house and want to stay there. She further testified, it is a parent-child relationship they have with the Foster Parent. I.G.M.D. has been with Foster Parent, Tamika Nelson, since 5/4/2016 and G.I.M. has been with her since 10/19/2016. Both Children are doing very well in the foster home, and especially I.G.M.D. is progressing. The Foster Mother works very hard with her, and both Children have a positive relationship with her. (N.T. 7/20/2017, p.34 at 22-25; p.35 at 1-20).

On cross-examination by Mary A. Galeota, the Child Advocate, Ms. Erwin testified that I.G.M.D. is now 5 years old, and G.I.M. is 9 years old. She noted the Children told her they want to stay in the Foster Home, and there are other Children living there, Ms. Nelson's biological daughter and two nephews, who are in Kinship with her. (N.T. 7/20/2017, p.40 at 22-25; p.41 at 1-15).

15

## STANDARD OF REVIEW AND LEGAL ANALYSIS

When reviewing an appeal from a decree terminating parental rights, an appellate Court is limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, an appellate court must accord the hearing judge's decision the same deference that it would give to a jury verdict. The Pennsylvania Superior Court need only agree with a trial court's decision as to any one subsection under 23 P.C.S.A. §2511 (a) in order to affirm a termination of parental rights. *In re D.A.T. 91 A.3d 197 Pa.Super.2014).*

The standard of review in termination of parental rights cases requires appellate Courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. In re T.S.M., 620 Pa. 602, 71 A.3d 251, 267 (2013) (citations and quotation marks omitted) In re Adoption of C.D.R., 2015 PA Super 54, 111 A.3d 1212, 1215 (2015).

Termination of parental rights is governed by Section 2511 of the Adoption Act 23 Pa.C.S.A. §§ 2101–2938, which requires a bifurcated analysis. Initially, the focus is

16

on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond. *In re L.M.,* 923 A.2d 505, 511 (Pa.Super.2007) (citations omitted). In re Adoption of C.J.J.P., 2015 PA Super 80, 114 A.3d 1046, 1049-50 (2015). The Court need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. In re Adoption of C.J.J.P., 2015 PA Super 80, 114 A.3d 1046, 1050 (2015).

These Children became known to DHS in October 2014, when information was received that the Mother and the Children, then ages 6 ½ and 3 years, were on a street corner and Mother asked the Children's Maternal Uncle, M.S. to help her inject drugs; that when he refused, Mother injected the drugs herself; that the Children began to wander off so M.S. took the Children to the home of their Maternal Grandmother, S.S. Further, G.I.M. was found holding Mother's purse which had needles in it. Both Children were in Mother's care at the time. The Children are now 9 ½ and 6 years old, and are safe and all of their needs are being met by their Foster Mother.

### A. The Trial Court Properly Found the Department of Human Services Met Its Burden by Clear and Convincing Evidence To Terminate Mother's Parental Rights Pursuant to 23 Pa.C.S.A. §2511(a)(1), and (2), (5), and (8)[2]

On Appeal, Mother first states the Court erred by terminating her parental rights in her absence at the trial because there was no service of the petition on Mother. This Court disagrees with this allegation, and notes that Bridget Warner, attorney for DHS, presented evidence of Subpoenas issued for Mother's presence at the trial.[3]

These two (2) Subpoenas were issued as a result of a Parent Locator Service (PLS) search that was completed for Mother which resulted in two addresses for her at

---

[2] (a) General Rule.—the rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

    (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parenting claim to a child or has refused or failed to perform parental duties.

    (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parents by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of the parent by the court or under voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would best serve the needs and welfare of the child.

[3] Subpoenas: Commonwealth of PA, County of Philadelphia (DHS Exhibit #1)

4448 Elizabeth Street, Philadelphia, PA 19124 and 3132 F Street, Philadelphia, PA 19134. Service was attempted on June 1, 2016, and after three attempts were made, the document was left at the door.

This Court specifically addressed this issue at the commencement of the trial on July 20, 2017. This Court found that "service was appropriate as to Mother based on the principle of reasonable efforts, and that DHS exhausted all known and possible addresses of Mother, and Mother failed to maintain an appropriate update of her addresses, despite the fact that her Children were in placement. Reasonable efforts as to Mother." (N.T., 7/20/2017 at p.7 at 1-9).

Next, Mother alleges she has achieved some of her objectives and can be a parent. The Court disagrees, and found clear and convincing evidence that Mother failed and refused to perform parental duties, failed to address the conditions which brought the Children into placement, and lacks the capacity to adequately provide care and control and a stable environment necessary for the Children's well-being.

This Court relied on credible testimony by both CUA Case Managers, Ms. Iesha Erwin and Catherine Devine, who both testified that the SCP objectives for Mother were to obtain and maintain housing, drug and alcohol treatment, employment and visitation with her Children. Credible evidence was presented that Mother failed to complete, and still has not completed the objectives in the SCP.

Ms. Erwin testified Mother's specific drugs of choice were opiates and PCP. Mother was referred, enrolled and re-referred and re-enrolled in various drug and alcohol programs, however, never completed any of the programs. Mother failed to maintain sobriety long enough to achieve unsupervised visits with her Children, and all of her

19

visits were supervised on a weekly basis. Regarding housing, Ms. Erwin testified that

Mother never obtained safe and appropriate housing for reunification with her Children.

Mother also was referred to ARC services, and did complete parenting classes. Ms.

Devine noted that Mother has visited the Children seven times since December 2016, and

she has observed the visits. She testified she does not believe a parent-child relationship

exists between Mother and her two Children. She further testified that the Children have

a parental bond with the foster mother, T.N. and are safe and all their needs are met in her

home.

## B. Trial Court Properly Found that Termination of Mother's Parental Rights was in the Children's Best Interest and that DHS Met Its Burden Pursuant to 23 Pa.C.S.A. §2511(b).[4]

After the Court finds that the statutory grounds for termination have been

satisfied, it must then determine whether the termination of parental rights serves the best

interests of the children pursuant to 2511(b) In re Adoption of C.L.G., 956 A2d 999

(Pa.Super 2008). In terminating the rights of a parent, the Court 'shall give primary

consideration to the development, physical and emotional needs and welfare of the

child." 23 Pa.C.S.A. §2511(b). One major aspect of the needs and welfare analysis

---

[4] Other Considerations.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1),(6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

concerns the nature and status of the emotional bond between parent and child. In re T.S.M., 71 A3d.

This Court heard credible evidence presented by both CUA Case Managers, who testified that the Children were positively bonded to the Foster Parent, and referred to the bond as "Mother." They both look to her for safety and to meet their needs. Ms. Devine also observed how the Children interact with Mother at the supervised visits, noting that Mother would pay more attention to one Child than the other, and the Children showed no reaction when the visits would end. She noted that they both expressed to her that they want to continue to live with the Foster Mother.

Ms. Devine noted that the Children need the safety and security that Mother cannot provide, and they would not suffer irreparable harm if Mother's parental rights were terminated and it would be in their best interest to be adopted.

The Court found credible the evidence that the Children were not bonded to Mother and do not ask to be reunited with her. Therefore, this Court reasoned that the Children would not suffer irreparable harm if Mother's parental rights were terminated, and it would be in their best interests to be adopted.

C. **Trial Court Properly Appointed Counsel to Represent the Children in the Termination of Mother's Parental Rights proceeding pursuant to 23 Pa.C.S.A. §2313(a).**[5]

---

[5] **Representation for child. (a) Child.**—The Court shall appoint counsel to represent the Child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

21

Finally, Mother alleges the Court erred in terminating her parental rights because it was not based on clear and convincing evidence because the Children's wishes were not adequately ascertained under *In Re Adoption of LBM* (84 MAP 2016). This Court disagrees with Mother. The statute prescribing the scheme for the representation of children in contested, involuntary termination of parental rights cases requires the appointment of counsel who serves the child's legal interest. In re Adoption of L.B.M., 161 A3d 172, Sup.2017.

In this matter, both, I.G.M.D. and G.I.M., were represented during the Court proceedings by counsel. Guardian Ad Litem, Claire Michelle Stewart, Esquire, entered her appearance as counsel on November 25, 2014, for both Children. This Court ordered on April 27, 2017, that the Legal Liaison Unit administratively appoint counsel for the Children, and thereafter, Mary A. Galeota, Esquire, was appointed as TPR Child Advocate for both Children and appeared at the hearing on July 20, 2017. Both Ms. Stewart and Ms. Galeota were present at the hearings, and advocated for the Children. Therefore, this Court opines that Mother's assertion that the Court erred was not supported by the evidence, and the Children's needs and welfare were actively advanced by their duly appointed counsel, pursuant to 23 Pa.C.S.A. §2313(a).

## CONCLUSION:

At the conclusion of the Hearing the Court stated:

> Regarding Mother, D.J.M., the evidence is clear and convincing that Mother has failed to remedy any of the issues that brought both Children into care. The Children were removed from her care on or about 11/24/2014, and placed, circumstances surrounding that removal include the Children wondering (sic) the streets while the Mother was using drugs, that evidence is un-contradicted. The Mother had certain goals established for her, the evidence is un-contradicted, that she has not completed any goals or objectives. The historical failure to remedy these goals suggest an inability to remedy the goals going forward. Mother's absence today plus her absence during the majority of these girls' lives establish a finding that there is no parental bond. Mother has failed to maintain whatever bond there may have been in the beginning, and based upon the historical behavior of Mother and her failure to complete any objectives and goals which have been offered to her throughout the life of this case, to assist her in reestablishing the necessary skills to parent these Children have not been accepted, received, or in any way used by Mother to benefit her standing as a parent.
>
> Therefore, Mother's rights are terminated pursuant to 2511 (a)(1) and (2), and specifically because the Children were in Mother's care at the time that they were brought into DHS's care, (5), and (8) are established, specifically because the placement and the removal of the Children have been for a period of approximately 32 months.
>
> Regarding 2511 (b), Mother's rights are terminated because she has failed to maintain a parental relationship with these Children, there is none that exists now. And based upon her behavior there would not be an ability to perform a parent bond with the Children going forward. That bond has been created with the girls' current caretaker, although the Children's needs are being met by the caretaker, they are thriving within the caretakers' family and become a part of that family. 2511 (b) is established.
>
> (N.T., 7/20/2017, p.54 at 18-25; p.55 at 1-25; p.56 at 1-12).

23

For the foregoing reasons, this Court respectfully requests that the Orders of July 20, 2017, Terminating Mother, D.J.M.'s Parental Rights to both Children and changing the Children's Permanency Goals to Adoption be AFFIRMED.

BY THE COURT:

_____
ALLAN L. TERESHKO, Sr. J.

10-11-17
DATE

24

## CERTIFCATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing OPINION has been served upon the following parties by the manner as designated:

**Family Court Delivery Mail Box**

Nghi Duong Vo, Esq.
1500 Walnut St., Ste. 2000
Philadelphia, PA 19102
Counsel for Appellant Mother, D.M.

Neal M. Masciantonio, Esq.
1806 Callowhill St., Ste. 1199
Philadelphia, PA 19130
Counsel for Father, K.D.

Taniesha L. Clement, Esq. ACS,
Phila Solicitor's Office
One Parkway, 1515 Arch St, 15th flr.
Philadelphia, PA 19102
DHS Counsel

Clair Michelle Stewart, Esq.
100 S. Broad St., Ste. 1523
Philadelphia, PA 19110
GAL for Children, G.I.M. and I.G.M.D.

Mary A. Galeota, Esq.
1551 Market St., Ste. 1200
Philadelphia, PA 19102
Child Advocate for Children, G.I.M .and I.G.M.D.

_____
**ALLAN L. TERESHKO, Sr. J.**

Oct. 11, 2017
**DATE**